UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WESLEY SANDLIN, Individually and on behalf of other employees similarly situated** § § § <br> § <br> **Plaintiff,** § <br> **v.** § <br> § <br> **GRAND ISLE SHIPYARD, INC.,** § <br> § <br> **Defendant.** § | **CIVIL ACTION NO. 18-7607** <br><br> **SECTION "I" – JUDGE AFRICK** <br><br> **MAG. DIV. (4)** <br><br> **MAGISTRATE JUDGE ROBY** <br><br> **COLLECTIVE ACTION** <br><br> **JURY TRIAL DEMANDED** |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Wesley Sandlin ("Plaintiff" or "Sandlin"), individually and on behalf of all others similarly situated (collectively "Plaintiffs"), file Plaintiff's First Amended Complaint - against Defendant Grand Isle Shipyard, Inc. ("Defendant" or "GIS"), and for cause of action would specifically show that:

### I.   PRELIMINARY STATEMENT

1. Plaintiff Wesley Sandlin brings this civil action pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA") on behalf of himself individually and on behalf of all those similarly situated, to recover unpaid back wages (29 U.S.C. § 211(a)), an additional equal amount as liquidated damages (29 U.S.C. § 216(c)), attorney's fees and costs (29 U.S.C. § 216), and pre- and post-judgment interest.

2. Plaintiff seeks certification of this suit as a collective action on behalf of all current and former "Life Representatives" who Defendant has employed during the period commencing on April 30, 2016 ("Collective Action Members"), and who have not been paid overtime compensation for all overtime hours worked.

1

## II.     PARTIES

### A.     Collective Action Members.

3. Mr. Sandlin is an individual residing at 4 Lasswade Lane, Bella Vista, Arkansas, 72715.

4. Mr. Sandlin started working for GIS in November 2011 as a "life representative." In the construction industry every construction site would have a Safety Man. GIS refers to their Safety Men as Life Representative. GIS would send assign a Life Representative to every construction job it has under contract.

5. The Collective Action Members are all individuals employed by GIS from April 30, 2016 to present as a "Life Representative" or performed similar duties[1] as Plaintiff (hereafter, "Life Representative"); and were not compensated for all overtime hours worked.

6. Like Plaintiff, these persons engaged in commerce or in the production of goods for commerce in the performing of their duties for Defendant. These collective action members are referred to as "similarly situated."

7. Plaintiff attached the May 3, 2016 Job Description for the position of Life representative as Exhibit A. This document is Defendant's job description for the position that the Plaintiff Sandlin, the two opt-in Plaintiffs and the proposed class held. Plaintiff and the proposed class also performed those tasks and duties on the attached checklists. (Exhibit B – Exhibit D). The GIS job description for Life Representative and checklists used by Life Representative are included to help Defendant identify the workers who are part of the class.

### B.     Defendant.

---

[1] See Exhibit A GIS Job Description for Life Representative

8. Defendant Grand Isle Shipyard, Inc. ("GIS" or "Defendant") is a Louisiana For-Profit Corporation whose corporate headquarters are located at 18838 Hwy. 3235, Galliano, LA, 70354, which is located in the Eastern District of Louisiana. GIS can be served with citation by serving its registered agent for service of process, CT Corporation System at 1999 Bryan St., Ste., 900, Dallas, TX 75201, or wherever else it may be found.

9. At all relevant times, GIS has been engaged in the business of owning and operating an oilfield services company nation-wide. Defendant is engaged in interstate commerce with an annual volume of sales of not less than $500,000.

10. At all relevant times to this action, Defendant was the employer of Plaintiff and all others similarly situated within the meaning of 29 U.S.C. § 203(d) and is an "enterprise" engaged in commerce as defined in 29 U.S.C. §§ 203(r), 203(s).

### III. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to the terms of the FLSA (29 U.S.C. §216(b)) and 28 U.S.C. §1331.

12. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. §1391(b) and (d) because Defendant is located in this District and a substantial part of the events forming the basis of this action occurred in this district.

### IV. FACTUAL BACKGROUND

13. This lawsuit covers the time period of April 2016 to the present.

14. GIS[2] is an oilfield services company that provides construction, maintenance and turnaround, production, and engineering services. One service that GIS provides is construction service[3].

---

[2] http://www.gisyeng.com/
[3] http://www.gisy.com/construction/

15. GIS provides safety men for construction jobs where they monitor GIS workers on construction projects. GIS also hires out its safety men to monitor construction workers of other companies.

16. GIS refers to its safety service as "Life" and its safety men as "Life Representatives".

    GIS's website describes the safety program as follows:

    "LIFE is the proactive, operational, and behavior-based component of GIS's comprehensive Safety Management Program. While our Corporate HSE group focuses on compliance, training, and incident response, the LIFE processes specifically cover Operational Safety, through: comprehensive work planning; increasing awareness of work area & task risks; intervention techniques for redirecting at-risk behaviors; embedded field presence; quarterly initiatives focused on observed areas of risk; and visible leadership engagement.[4]"

17. Mr. Sandlin started working as a Life Representative for GIS in November 2011.

18. Mr. Sandlin's job duties as a Life Representative was to follow company procedures and checklists in monitoring the work and work environment of other GIS employees to ensure compliance with GIS's safety guidelines and checklists.

19. Mr. Sandlin worked substantial overtime hours, oftentimes working twelve hours days, seven days per week.

20. In April 2016, Mr. John Conerly, GIS's Senior Vice President of Operations and Mr. Patrick Cheramie, Manager of Operations-Safety, held a conference call with Plaintiff and other members of the Putative Class.

21. During that call Mr. Conerly said GIS was switching all Life representatives from Salary to Hourly. Mr. Conerly said that GIS had been sued twice and lost two suits for overtime and GIS did not want to lose in another case.

---

[4] http://www.gisy.com/safety/

4

22. During that call Mr. Conerly told Plaintiff that Plaintiff would get overtime for all hours Plaintiff, and his similarly-situated peers worked more than 40 per week. Defendant instructed Plaintiff to not record more than 50 hours per week on Plaintiff's time sheet no matter how many hours Plaintiff worked.

23. For the pay period beginning on April 30, 2016, GIS began paying Plaintiff and the Putative Class time and one-half for what Grand Isle claimed was the overtime hours for Plaintiff and the Putative Class.

24. From April 30, 2016, GIS reclassified the Plaintiff and Putative Class as non-exempt employees and started to pay them on an hourly basis. Since GIS had to pay for overtime, they restricted the Life Representatives from recording any hours they worked over 50 hours each week.

25. While restricting the Life Representatives from recording all the hours they worked over 50 hours a week, GIS required the Life Representatives to work overtime in excess of fifty (50) hours per week and frequently did not pay them overtime for the off the clock hours.

26. The payroll records for the Plaintiff and the opt-in during the time period covered in this lawsuit often reflected exactly 50 hours a week.

27. GIS required to Life Representatives to be present and perform safety man functions at all times when there are GIS workers working on the job sites.

28. Unlike the Life Representatives, GIS construction workers were not limited to working 50 hours a week. The Life Representatives assigned to the construction crew would have to work the same number of hours the construction crew worked even if it was in excess of 50 hours a week.

29. As a result, Plaintiff and the Putative Class could not limit their actual work time to the 50 hours GIS permitted them to record a week. Sometimes the work crew would work 10 to 15 hours a week or more in unpaid overtime.

30. For example, during the work week of June 15, 2016 through June 21, 2016, Plaintiff Sandlin worked 70 hours. Plaintiff Sandlin had thirty hours of overtime during this workweek. As per Defendant's pay policy for Life Representatives, Defendant only paid Plaintiff Sandlin for the first 40 hours at $22.91 and $34.37 for the first ten hours of overtime. For this example, Defendant owes Plaintiff Sandlin $ 687.40 for twenty hours (20) hours of unpaid overtime for that particular workweek.

31. For example, during the work week of July 5, 2017 through July 11, 2017, Opt-in Plaintiff Triggs worked 65 hours. Opt-in Plaintiff Triggs had twenty-five hours of overtime during this workweek. As per Defendant's pay policy for Life Representatives, Defendant only paid Opt-in Plaintiff Triggs $22.70 per hour for the regular 40 hours and $34.05 per hour for the first 10 hours of overtime. GIS owes opt-in Plaintiff Trigg's $ 510.75 (15 hours overtime x $ 34.05) for fifteen (15) hours of unpaid overtime.

32. On most projects, GIS would have to pay for the overtime and not be reimbursed by a customer. GIS would pay only 10 hours of overtime and requiring the Life Representatives to work the remaining overtime off the clock. As a result, GIS would require to the Life Representatives to work off the clock and pay only for the first 50 hours a week.

### V. **VIOLATIONS OF THE FLSA – OFF THE CLOCK WORK**

33. All previous paragraphs are restated and re-alleged as though fully set forth herein.

34. The FLSA requires that covered employees be compensated one-and-one-half times their regular rate for hours worked over 40 per workweek. 29 U.S.C. § 207.

6

35. GIS is a covered "employer" required to comply with the FLSA's mandates.

36. Plaintiff, and other similarly-situated Life Representatives (hereafter "Putative Class"), are/were covered employees, i.e. non-exempt employees, entitled to the FLSA's protections.

37. GIS failed to maintain accurate time records of Plaintiff's and the Putative Class's actual start times, actual stop times, hours worked each day and total hours worked each workweek, within the three (3) year statute of limitations period.

38. As a result of the underpayment of wages alleged above, Defendant is indebted to Plaintiff and the Putative Class in the amount of the unpaid overtime compensation.

39. Plaintiff and the Collective Action Members are further entitled to recover an additional equal amount as liquidated damages (29 U.S.C. § 216(c)) and attorney's fees and costs (29 U.S.C. § 216).

40. The written Consent form of Mr. Sandlin was filed on August 10, 2018. (Dkt. No. 1-3).

### VI. COLLECTIVE ACTION ALLEGATIONS

41. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

42. Plaintiff Sandlin ("Plaintiff") brings this action for violations of the FLSA as a collective action pursuant to Section 216(b) of the FLSA, 29 U.S.C. §216(b), on behalf of all "Life Representative(s)" who were not compensated for overtime hours worked, who GIS employed since April 30, 2016.

43. Similarly-situated Life Representatives were not paid overtime compensation for any hours they worked "Off the Clock." Life Representatives do not have exempt duties, but rather merely facilitate an automated process dictated by guidelines and checklists. Life

Representatives do not have discretion and independent judgment in performing their day-to-day work.

44. Starting in April 2016, GIS paid Plaintiff and all Life Representatives on an hourly basis.

45. **From April 2016 to present, GIS cannot meet the salary basis test for any exemption because they paid the Life Representatives (including Plaintiff and the opt-ins) on an hourly basis.**

46. Therefore, Plaintiff should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. §216(b).

## VII.     JURY DEMAND UNDER FED. R. CIV. P. 38

46. Plaintiff demands a jury for each and every issue triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all similarly-situated Life Representatives prays for relief as follows:

A.  Designation of this action as a collective action on behalf of the similarly-situated Life Representatives and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Putative Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.  Lost overtime wages and improperly deducted wages and overtime, to the fullest extent permitted under the law;


C. Liquidated damages, prejudgment interest, and monetary penalties to the fullest extent permitted under the law;

D. Litigation costs, expenses, and attorney's fees to the fullest extent permitted under the law; and

E. Such other and further relief as this Court deems just and proper.

Respectfully Submitted,

TRAN LAW FIRM
/s/ Trang Q. Tran
Trang Q. Tran
*(Pro Hac Vice pending)*
*Attorney-in-charge for Plaintiff*
Federal I.D. 20361
Texas Bar No. 00795787
2537 S. Gessner Road, Suite 104
Houston, Texas 77063
(713) 223-8855 Telephone
(713) 623-6399 Facsimile
Ttran@tranlawllp.com
Service@tranlawllp.com

Scott Webre
WEBRE AND ASSOCIATES
2901 Johnston Street, Suite 307
Lafayette, Louisiana 70503
Telephone: (337) 237-5051
Facsimile: (337) 237-5061
Email: scott@webreandassociates.com

**ATTORNEYS FOR PLAINTIFF AND SIMILARLY SITUATED INDIVIDUALS** **CERTIFICATE OF SERVICE**

I certify that on October 9, 2018, Plaintiff served a copy of the foregoing document on all counsel of record through the Court's ECF filing system

/s/ Scott Webre

sScott Webre

9